Mario Pittoni, J.
The plaintiff moves for summary judgment in an action on two hospitalization and surgical expense policies.
On or about June 20, 1958 the defendant issued two policies of insurance, one to cover hospital and surgical expenses and the other to cover hospital room expenses. The plaintiff seeks to recover under each policy for expenses incurred during a 54-day period of confinement in a hospital commencing on August 14, 1960. This followed an operation called a suprapubic prostatectomy. The defendant seeks to rescind the policies on the ground that the plaintiff induced the issuance of these policies by fraudulent statements in the applications for insurance. The defendant contends that the plaintiff had a history of prostatic hypertrophy for which he had been medically treated during the three-year period which ended on June 20,1958. Yet, *281 in the applications the plaintiff answered “ Mo ” to the question ‘ ‘ Have you * * * received medical or surgical advice or treatment or been hospitalized within three years? ”.
The plaintiff contends that, assuming the statements he made were fraudulent, the defendant may not void the policy because of certain provisions contained in the policy itself. Under “ General Provisions ” the policy states: “ 2. Time Limit On Certain Defenses: (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy, shall be used to void the policy or to deny a claim for loss incurred after the expiration of such two-year period; (b) No claim for loss incurred after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.” More specifically, the plaintiff contends that paragraph (b) has created an absolute limitation against the defendant since the policy has been in effect for at least two years, regardless of the specific exception in respect to ‘ ‘ fraudulent misstatements ’ ’ specified in paragraph (a). The plaintiff goes on to argue that if there is any ambiguity in an insurance contract it must be resolved in favor of the insured and against the insurer; and furthermore, that if there is any doubt or uncertainty as to its meaning and the policy is fairly susceptible of two interpretations, one favorable to the insured and the other to the insurer, the one favorable to the insured should be adopted. In making these contentions the plaintiff has overlooked the fact that paragraph 2 of the policy is not the product of the defendant’s draftsmanship but of legislation. This provision must be included in all such policies by the requirement of section 164 (subd. 3, par. [2], els. [a], [b]) of the Insurance Law; and the language in the policy is the same as that in the Insurance Law. Therefore, the usual rules requiring the interpretation of ambiguous provisions most strongly against the draftsmanship of a contract do not apply in this case. It is a statute which is to be interpreted, and it must be interpreted reasonably to give effect to both paragraphs, even though this section is an example of “ legalese gobbledygook ”.
If the plaintiff’s argument should be adopted, its effect would be to have clause (b) nullify or wash out clause (a). That is not a reasonable construction of the statute. The Legislature could not reasonably have intended to enact one clause and immediately to nullify it by another clause enacted at the same *282 time. Both clauses must be interpreted in a meaningful and reasonable way. They should not, if reasonably possible, be interpreted as contradictory to each other, and each clause should be interpreted to arrive at a reasonable objective.
A close reading of both clauses shows that clause (a) discusses misstatements, but that clause (b) discusses nonstatements. More specifically, whereas clause (a) deals with misstatements as to prior diseases or conditions affirmatively made by the insured, clause (b) deals with situations where the insured said nothing as to any pre-existing disease or condition. Thus, clause (a) bars the insurer defendant from voiding or denying the claim after two years have expired, if the insured plaintiff affirmatively made a wrong statement as to any pre-existing disease or condition. But it does not bar the insurer if that wrong statement was made fraudulently, that is, with intent to deceive the company. On the other hand, clause (b) does not deal with any wrong statements, nor with any affirmative statements of any kind made by the insured, but deals only with situations where the disease or condition pre-existed and was not mentioned at all in the application. Such a situation could occur where the insured had a pre-existing disease or condition, but was not aware of it. Thus, clause (b) merely bars the insurer from voiding or denying any claim for a pre-existing disease or condition if the insured merely failed to mention it in his application.
The only case cited by either party is American Cas. Co. v. Heilman (81 A 2d 463 [D. C.], affd. 194 F. 2d 348). The plaintiff claims that the Heilman case is on all' fours with the present case. The courts there held in favor of the insured on similar facts and on similar provisions in the policy. However, a difference is that in the Heilman case the courts could and did apply the rule of interpreting ambiguous or uncertain language against the draftsmen of the policy. In the case at bar the provisions involved were not drafted by the insurer, but were mandatorily included in the policy by virtue of section 164 of the Insurance Law.
In short, the affirmative defense and counterclaim is proper under clause (a), and there is an issue of fact to be resolved at the trial as to whether the misstatements were made innocently or fraudulently. The motion for summary judgment, therefore, must be and is denied.